UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALBERTA PRICE DOMANGUE                    CIVIL ACTION

VERSUS                                    NO. 10-3389

CASTEX ENERGY 1995, L.P. and CASTEX       SECTION: "G"(3)
ENERGY, INC.

ORDER AND REASONS

Before the Court are The Lirette Family's Motion for Summary Judgment[1] filed by Vaughan Andrew Lirette, Jr., Kenneth W. Lirette, Tracie Lirette Dolan, Stephen J. Lirette, Janelle Marie Lirette, and David P. Lirette (collectively, the "Lirette Family") and Castex's Motion for Summary Judgment[2] filed by Castex Energy 1995, L.P. and Castex Energy, Inc. (collectively, "Castex"). In the Lirette Family's Motion for Summary Judgment, the Lirette Family requests that the Court enter summary judgment dismissing all claims filed against the Lirette family by Castex and Alberta Price Domangue ("Plaintiff").[3] In Castex's Motion for Summary Judgment, Castex requests that (1) all claims filed by Plaintiff be dismissed; (2) the Court declare the Lirette Family and Rubaiyat, L.L.C. the owners of an undivided 20% interest in the disputed property; and (3) the remaining proceeds in the registry be released to Castex for disbursement between the Lirette Family and Rubaiyat, L.L.C. Having considered the motions, Plaintiff's response, Castex's reply, the record, and the applicable law, the Court will deny summary judgment on the pending motions.[4]

---

[1] Rec. Doc. 136.

[2] Rec. Doc. 145.

[3] Rec. Doc. 136.

[4] Although Castex and the Lirette Family both filed motions for summary judgment, the motions make nearly identical substantive arguments, namely that the Lirette Family is the true owner of the property and summary

1

## I.  Background

### A.  Factual Background

The instant litigation arises out of the suit filed by Plaintiff against Castex to recover royalties allegedly due to Plaintiff as the alleged owner of property Castex was drilling on in Lake Boudreaux Field in Terrebonne Parish, Louisiana.  The parties dispute ownership of a 30-acre parcel of land, hereinafter referred to as the "Subject Tract," situated in:

> Section 48, Township 19 South, Range 18 East, Terrebonne Parish, Louisiana and being more particularly described as the lower one-half of said section, and being bounded by lands owned nor or formerly as follows: North by Ernest Lapeyrouse and assigns; South by Emile Authement heirs or assigns; East by Louisiana Land and Exploration Company; and West by Bayou Little Caillou.[5]

A portion of the Subject Tract (hereinafter "Unit Tract 2") is located within the area Castex is drilling for oil, gas and minerals.  According to Castex, the entirety of Unit Tract 2 is submerged marshland.

The tax assessor lists a number of parties as the co-owners in indivision of the Subject Tract, including members of the Lirette Family, Rubaiyat, L.L.C ("Rubaiyat"), and Eural Domangue.[6]  Plaintiff claims she acquired a 20% undivided interest in Unit Tract 2 through acquisitive prescription; whereas the Lirette Family and Rubaiyat argue that they each own 10% of the 20% undivided interest claimed by Plaintiff in Unit Tract 2 by "record title."[7]

---

judgment should be granted against Plaintiff.  *See* Rec. Docs. 136 & 145.  Plaintiff responded to the Lirette Family's Motion for Summary Judgment, but she did not enter any opposition to the motion filed by Castex.  *See* Rec. Doc. 148.  Nevertheless, Castex filed a Reply Memorandum in Support of Summary Judgment, noting that "the two [summary judgment] motions are essentially on the same grounds; thus, this reply memorandum applies equally to both motions."  Rec. Doc. 156.  Therefore, the Court will now address both pending summary judgment motions.

[5] Rec. Doc. 11 at p. 2.

[6] *Id.*; Rec. Doc. 136-1 at p. 1.

[7] Rec. Doc. 136-1 at p. 1.

### 1. *The Lirette Family Chain of Title*

The Lirette Family's chain of title commenced when J.B. Duplantis and Joseph Brunet, Sr. acquired Unit Tract 2 as part of a larger piece of property from the Public Domain by virtue of transfer from the United States of America on June 18, 1836.[8]  Thereafter, on April 21, 1870, J.B. Duplantis and Joseph Brunet Sr. partitioned the property, with Joseph Brunet, Sr. acquiring the southern portion of the land, the Subject Tract, containing Unit Tract 2.  Joseph Brunet, Sr. and his wife died intestate leaving the land to their five children.  Therefore, each of the children, including Acklin Brunet, inherited an undivided 20% interest in the Subject Tract and Unit Tract 2.  In 1937, Acklin Brunet conveyed his 20% undivided interest in the land to Lawrence Gautreaux, and then on February 2, 1938, Gautreaux conveyed his undivided 20% interest in the land to Bagley C. Lirette.  Bagley C. Lirette subsequently sold his interest in the land to Ruth Lirette Baker in 1940.[9]

On August 1, 1942, Ruth Lirette Baker transferred an undivided ½ of her undivided 20% interest in the property to Vaughan Andrew Lirette, Sr.[10]  The remaining undivided ½ of Ruth Lirette Baker's undivided 20% interest in the property descended, through mesne conveyance, to Rubaiyat, L.L.C.[11]  The heirs of Vaughan Andrew Lirette, Sr. inherited the undivided 10% (undivided ½ of the undivided 20%) interest in the land by virtue of a Judgment of Possession dated July 21, 1998.  The Judgment of Possession provided that Vaughan Andrew Lirette, Jr.

---

[8] *Id.* at p. 2.  All acts of transfer, judgments of possession, and leases of the land at issue in this lawsuit were duly recorded in the Conveyance Book in Terrebonne Parish, Louisiana.

[9] *Id.* at pp. 2-3.

[10] *Id.* at p. 3.

[11] *Id.* at pp. 3-4.

inherited an undivided ½ of the 10% interest of his father, while the other six children of Vaughan Andrew Lirette, Sr. inherited in equal portions the remaining ½ of the 10% interest of their father.   Therefore, Rubaiyat and the Lirette Family are established as co-owners in indivision of Acklin Brunet's original 20% interest in the property that includes Unit Tract 2.[12]

### 2.   *Plaintiff's Chain of Title*

Plaintiff's chain of title also commenced with Acklin Brunet's undivided 20% interest in the Subject Tract, which he sold to Lawrence Gautreaux on April 9, 1937.[13]   When Acklin Brunet died, there was no succession.   On October 25, 1963, Charles A. Martin purchased the undivided 20% interest in the property from Acklin Brunet's heirs.[14]   After the Succession of Charles A. Martin was probated, the heirs of Charles A. Martin were placed in possession. Specifically, Charles A. Martin's widow acquired an undivided ½ interest in the undivided 20% interest in the property, and the five children equally shared the remaining undivided ½ interest in the undivided 20% interest in the property.[15]

On April 2, 1986, the Martin heirs sold what they believed to be their undivided 20% interest or "whatever it be"[16] to Danny Farkas and Alberta Price Domangue (formerly Alberta Price Farkas), husband and wife.[17]   Plaintiff and her former husband, Danny Farkas, began

---

[12] *Id.* at p. 4.

[13] Rec. Doc. 148 at p. 2.

[14] *Id.*

[15] *Id.* at p. 2.

[16] Rec. Doc. 148-6.

[17] Rec. Doc. 148 at p. 3.

building a home on the Subject Tract at 5857 Bayouside Drive in April of 1986.[18]  In 1988, one

year after construction on the home was complete, Danny Farkas had the property surveyed by

T. Baker Smith, who marked off the Plaintiff's tract of land, as well as Angela Lirette and Albert

Scott's land.[19]  On April 16, 1990, Mr. Farkas donated his undivided ½ interest in the property to

Plaintiff as part of a community property settlement when the couple divorced.[20]

     In 1991, Plaintiff began co-habitating with her second husband, Eural Domangue in the

house located at 5857 Bayouside Drive.[21]  In December of 1991, Eural Domangue executed Acts

of Sale with Angela and Perry Lirette and Francis Fanguy, allegedly to purchase the adjacent

tract of land to Unit Tract 2.[22]  According to Plaintiff, Eural Domangue's adjacent property has

an elevated mobile home, which was present when the land was purchased, and a steel shed.[23]

     Plaintiff claims she started paying taxes on the Subject Tract in 1987 until approximately

four years ago.[24]  In 2007 or 2008, Plaintiff did not receive her ad valorem tax notices from the

assessor.[25]  At the same time, Eural Domangue began receiving mineral payments to Plaintiff's

exclusion.[26]  When Plaintiff inquired about the mineral payments and tax notices, she discovered

the problem in her chain of title, which precipitated the current litigation.

---

[18] Rec. Doc. 136-24 at p. 2.

[19] Rec. Doc. 148-12 at p. 2.

[20] *Id.* at p. 6; *see also* Rec. Doc. 136-23 at p. 14.  The divorce of Danny Charles Farkas and Alberta Price Farkas was finalized by a Default Judgment of Divorce issued on September 10, 1991.  Rec. Doc. 136-23 at p. 15.

[21] Rec. Doc. 136-24 at p. 3.

[22] Rec. Doc. 148-12 at p. 2; *see also* Rec. Doc. 136-24 at pp. 9-16.

[23] Rec. Doc. 136-24 at p. 3.

[24] *Id.* at p. 4.

[25] Rec. Doc. 148-12 at p. 2.

[26] *Id.*

**B. *Procedural Background***

On September 1, 2010, the Plaintiff filed suit against Castex in the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana to recover royalties Plaintiff was allegedly owed,[27] which Castex removed to this Court on the basis of diversity jurisdiction on October 8, 2010.[28]   The case was initially allotted to Judge Carl J. Barbier, Section "J." On November 8, 2010, Castex answered the complaint and asserted third-party claims against John B. Kleinpeter and a group of persons (hereinafter, the "Record Title Owners"), in the event that the Plaintiff is successful in her main claim against Castex.  Castex also asserted a complaint of interpleader as a counterclaim to determine who, between Plaintiff and the Record Title Owners, including the Lirette Family and Rubaiyat, is entitled to the royalties deposited by Castex into the registry of the Court.[29]   Rubaiyat filed its Answer and Affirmative Defenses to the Interpleader and Third Party Complaint on November 8, 2011, claiming to be a true owner in indivison of the Subject Tract.[30]   The Lirette Family answered the allegations on December 13, 2011, claiming that Plaintiff is not Record Title Owner to the disputed tract of land and that Castex should not withhold royalties for Plaintiff, because she is not the true owner.[31]

The Lirette Family filed the pending motion for summary judgment on July 31, 2012,[32] alleging that Plaintiff cannot properly support a cause of action based on acquisitive prescription

---

[27] Rec. Doc. 136-1 at p. 5.

[28] Rec. Doc. 1.

[29] Rec. Doc. 11.

[30] Rec. Doc. 38.

[31] Rec. Doc. 74.

[32] Rec. Doc. 136.

against the Lirette Family under Louisiana law as there is no genuine issue of material fact.[33]  On August 14, 2012, this Court granted[34] Rubaiyat, LLC's Motion for Joinder in the Lirette Family Motion for Summary Judgment.[35]  Also on August 14, 2012, Castex filed the pending Motion for Summary Judgment on nearly identical grounds as the Lirette Family's motion.[36]  On August 16, 2012, Plaintiff filed an opposition to the Lirette Family's summary judgment motion,[37] but Plaintiff did not oppose the motion for summary judgment filed by Castex.  Castex filed a reply to Plaintiff's opposition to the Lirette Family's summary judgment motion, noting that its reply memorandum "applies equally to both motions."[38]  The Court will address both pending summary judgment motions.

## II.  The Parties' Arguments

### A.  *The Lirette Family's Motion for Summary Judgment*

The Lirette Family contends that "[t]o acquire right in property as owner, occupier must possess property, as owner for ten years in good faith under just title, or have possessed it for thirty years regardless of faith and title,"[39] which Plaintiff has allegedly not done.

---

[33] Rec. Doc. 136-1.

[34] Rec. Doc. 144.

[35] Rec. Doc. 143.

[36] Rec. Doc. 145.

[37] Rec. Doc. 148.

[38] Rec. Doc. 156 at p. 1.

[39] *Adolph v. Parish of Jefferson*, 93-1041 (La. App. 5 Cir. 4/26/94); 636 So. 2d 1087.

*1. Acquisitive Prescription of 10 Years*

According to the Lirette Family, "[t]o acquire the ownership of immovables by the acquisitive prescription of ten years, the four conditions of good faith, a just title, uninterrupted possession as owner, and an object which may be acquired by prescription, must concur."[40]  The Lirette Family argues that Plaintiff, and her predecessors-in-title did not possess an undivided 20% interest in Unit Tract 2 in good faith as the sole owners, because any possession exercised by Plaintiff was not based on a reasonable belief, in light of objective considerations, that she was the sole owner.[41]  In support of this contention, the Lirette Family notes three objective considerations suggesting that Plaintiff did not reasonably believe she was the true owner.  First, Plaintiff allegedly only paid taxes on the mobile home located on the Subject Tract, while the Lirette Family continued to pay all necessary property taxes on the property in dispute.[42]  Second, Plaintiff did not suggest or seek legal action to determine the fact that she was the true owner, until this action was filed.[43]  Finally, the Lirette Family alleges that "Plaintiff knew or should have known that she was not the true owner of the property at issue by virtue of an invalid title."[44]

---

[40] Rec. Doc. 136-1 at p. 17 (citing *LeBleu v. Hanszen*, 18 So. 2d 650 (La. 1994); *Everett v. Clayton*, 29 So. 2d 769 (La. 1947); *Dinwiddie v. Cox*, 9 So. 2d 68 (La. App. 1942); *Franz v. Mohr*, 4 So. 2d 584 (La. App. 1941)).

[41] Rec. Doc. 136-1 at p. 11.

[42] *Id.* at p. 19.

[43] *Id.* at p. 11.

[44] *Id.* at p. 12.

### 2. *Acquisitive Prescription of 30 Years*

The Lirette Family asserts that ownership of immovables "may be acquired by the prescription of 30 years without the need of just title or possession in good faith,"[45] if the possession is "continuous, uninterrupted, peaceable, public, and unequivocal."[46] According to the Lirette Family, the intent to possess as owner may be implied, but there must be strong evidence giving the owner some notice that his property is in jeopardy.[47]

First, the Lirette Family argues that Plaintiff cannot demonstrate the elements of exclusive, continuous, uninterrupted, and unequivocal possession of the property necessary to establish acquisitive prescription of thirty years. The Lirette Family notes that the submerged marshlands are not subject to being possessed by acts of cutting grass, shrubs and weeds.[48] Although Plaintiff alleges that she built a home on the property as notice of intent to possess as owner, the Lirette Family asserts that the tax records "prove[] she was owner only of the mobile home," which sat on a small portion of the Subject Tract. These acts were allegedly insufficient to give clear notice to the Lirette Family of Plaintiff's intention to hold as owner to the exclusion of the Lirette Family.[49] Furthermore, the Lirette Family maintains that they continuously visited the property, and thus Plaintiff cannot claim to have exercised exclusive and uninterrupted possession for thirty years.[50]

---

[45] La. Civ. Code art. 3486.

[46] Rec. Doc. 136-1 at p. 9 (citing La. Civ. Code art. 3476).

[47] *Id.* at p. 10 (citing *Delacroix Crop. v. Perez*, 98-2447 (La. App. 4 Cir. 11/8/00); 794 So. 2d 862).

[48] *Id.* at p. 12.

[49] *Id.* at p. 13.

[50] *Id.*

Additionally, the Lirette Family claims that Plaintiff and her predecessors-in-title failed to "demonstrate by overt and unambiguous acts, sufficient to give notice to any members of the Lirette Family . . . that she was the sole owner of Unit Tract 2 or the owner of an undivided interest in Unit Tract 2."[51]  The Lirette Family argues that the "mere fact[s] that the plaintiff placed a mobile home on the property (less than thirty years ago), paid taxes on the mobile home, and hunted on the property [are] not acts sufficient enough to prove adverse and/or hostile possession."[52]  In support of this position, the Lirette Family relies on *Liles v. Pitts*,[53] where the Supreme Court of Louisiana held that a purchaser of an undivided three-fifths interest in land who took possession as co-owner with the other owners of the remaining two-fifths interest, without notice to the co-owners, did not acquire title of such interest by adverse possession, though he paid taxes, built a house, and cultivated a small part of the property.[54]  Furthermore, the Lirette Family argues that Plaintiff failed to demonstrate any enclosure, such as "a ditch, a hedge, a road, turnrow, blackberry bushes, or the like," which is required to show evidence of hostile possession and the extent of that possession.[55]  Accordingly, the Lirette Family contends that Plaintiff has demonstrated mere occupancy, at best, over the land on which the mobile home is situated, because she has not demonstrated the visible boundaries necessary to give notice of hostile possession.[56]

---

[51] *Id.*

[52] Rec. Doc. 136-1 at p. 13.

[53] 82 So. 735 (La. 1919).

[54] *Id.*

[55] *Id.* at pp. 13-14.

[56] *Id.*

### B. Plaintiff's Opposition to Summary Judgment

#### 1. Acquisitive Prescription

Plaintiff argues that two material facts are in dispute: (1) whether Plaintiff, at all material times legitimately and reasonably believed that the person from whom she acquired titled was the true owner of the property; and (2) whether Plaintiff has over thirty years of peaceful and uninterrupted possession of the property.[57]

First, Plaintiff contends that she legitimately and reasonably believed that she acquired title from the true owner of the property based on the services of Milton Cancienne, an experienced estate and title attorney who handled her act of sale.  Plaintiff asserts that Mr. Cancienne told her he ran the title to the property back fifty years and found no defects, and he relied on a valid judgment of possession in the conveyance records that, on its face, gave her predecessors in title good and valid title to the property.[58]

Second, Plaintiff maintains that she has over thirty years of peaceful and uninterrupted possession of the property demonstrated by her good faith purchase of the tract of land with her first husband, Danny Farkas, on April 2, 1986,[59] construction of her home on the property, and recorded survey of the property.[60]  Further, Plaintiff avers that there is no evidence in the record that anyone, including the Lirette Family, ever challenged her title or right to possess the property until the present action was filed.[61]

---

[57] Rec. Doc. 148 at pp. 5-6.

[58] *Id.* at p. 6.

[59] Rec. Doc. 148 at Ex. F.  Danny Farkas, Plaintiff's former husband, ultimately donated his undivided one-half interest in the property to Plaintiff.  *See* Rec. Doc. 148 at Ex. G.

[60] *Id.* at p. 6 & Ex. K.

[61] *Id.* at p. 6.

### 2. *Prescription Against Co-Owners*

Plaintiff recognizes that "an owner in indivision [generally] cannot acquire by prescription the rights of his co-owners in the property held in common" under article 1497 of the Louisiana Civil Code;[62] however, Plaintiff contends that "[t]here is an exception recognized in those instances wherein the adversely possessing co-owner gives notice to the other co-owners that he intends to possess contrary to the common interest."[63] Plaintiff claims that she gave such notice to her co-owners through her Act of Sale and survey, and the fact that the "attempted conveyance is invalid is unimportant when determining whether a co-owner has given notice that she intends to possess for herself."[64] In support of her position, Plaintiff relies on *Cockerham v. Cockerham*,[65] where the court explained that "[a] recorded instrument may constitute notice to co-owners even though it is not translative of title [because] . . . [t]he function of the recorded instrument is simply to serve as an over manifestation that a co-owner exclusively possessing is doing so by virtue of his claim to exclusive ownership."[66]  Finally, Plaintiff argues that "[t]he mere fact that movers argue that [Plaintiff] cannot prove that she has exercised, exclusive, continuous, uninterrupted possession over Unit Tract 2 for a period of thirty years, standing alone, creates a dispute as to a material issue of fact."[67]

---

[62] *Id.*

[63] *Id.* at p. 7 (relying on *Givens v. Givens*, 273 So. 2d 863 (La. Ct. App. 1973)).

[64] *Id.*

[65] 44,587 (La. App. 2 Cir. 8/19/09); 16 So. 3d 1264.

[66] Rec. Doc. 148 at p. 7 (citing *id.*).

[67] *Id.* at p. 8.

### C. Castex's Reply in Support of Summary Judgment

In reply, Castex first emphasizes that Plaintiff's own evidence prohibits her from establishing thirty years acquisitive prescription because she only identifies acts of possession beginning in 1986.[68]   Thus, Castex argues that the plaintiff can only succeed here if she can establish ten-year acquisitive prescription.   Castex contends that "[b]ecause the plaintiff lacks title to the [Unit Tract 2] (hence her claim for acquisitive prescription), she is deemed to have 'possession only of the area [s]he actually possesses.'"[69]   According to Castex, even if Plaintiff built a home on the Subject Tract, she does not allege or present evidence that this home was located on Unit Tract 2 or that she otherwise built an enclosure around Unit Tract 2.[70] Therefore, Plaintiff's failure to present any evidence that she exercised any possession of the portion of the Subject Tract located within Unit Tract 2 renders her claim of acquisitive prescription insufficient as a matter of law.[71]

Castex further asserts that even if the acts of possession Plaintiff relies on extended to Unit Tract 2, her claims would fail as a matter of law because she cannot demonstrate that her possession of the undivided interest in co-owned land was adverse to her co-owners.[72] Plaintiff's reliance on *Givens* for the proposition that her "adverse possession must be clearly hostile and notice be given thereof" is misplaced, according to Castex, because the record contains no evidence that her possession was "hostile" as to the other parties here.[73]   In fact,

---

[68] Rec. Doc. 156 at pp. 1-2 (citing Rec. Doc. 148-12 at ¶ 1).

[69] *Id.* at p. 2 (citing La. Civ. Code art. 3426).

[70] *Id.* at p. 2.

[71] *Id.* at p. 2.

[72] *Id.* at pp. 2-3.

[73] *Id.* at p. 3 (citing Rec. Doc. 148 at p. 7).

Castex avers that Plaintiff demonstrates no continuous ten-year period when her possession was not in co-ownership with Eural Domangue.[74]   Castex argues that Plaintiff's co-ownership with Eural Domangue is fatal to Plaintiff's claim for two reasons: (1) possession with the permission of the co-owner, Eural Domangue, is "precarious possession" under article 3437 of the Louisiana Civil Code and cannot be relied on to establish hostile or adverse possession, without actual notice being given, which Plaintiff admits she did not do;[75] and (2) Eural Domangue's possession of the Subject Tract in connection with his living with the plaintiff also means that the Lirette Family and Rubaiyat were also deemed to have possessed the Subject Tract at the same time, because possession by one co-owner is considered as being possession by all co-owners.[76]

Next, Castex believes that Plaintiff's reliance on *Cockerham v. Cockerham*[77] is misguided, because that case does not support Plaintiff's claim for a number of reasons.  First, *Cockerham* rejected the claim of acquisitive prescription.[78]  Second, unlike in this case, the party asserting acquisitive prescription in *Cockerham* was already a co-owner of the land without acquisitive prescription and was seeking to claim adverse ownership against all other co-owners.[79]  Third, *Cockerham* held that "mere occupancy, use, payment of taxes and similar acts of possession do not constitute hostile possession against an undivided co-owner of the property," which further supports Castex's position that Plaintiff's actions were insufficient to

---

[74] *Id.*

[75] *Id.* at p. 7 (citing *Dew v. Hammett*, 91 So. 523, 525 (La. 1922) (a spouse's possession of property cannot be "hostile" to the other spouse)).

[76] *Id.* at p. 7 (citing *Arnold v. Sun Oil Co.*, 48 So. 2d 369, 288 (La. 1949)).

[77] 16 So. 3d 1264.

[78] Rec. Doc. 156 at p. 5.

[79] *Id.*

constitute hostile possession.[80]   Fourth, unlike the party in *Cockerham*, the plaintiff here has no

deed purporting to convey to her the entirety of the property at issue, because Plaintiff's deed

merely conveys "whatever" interest her heirs had (which was none).[81]   Finally, unlike the party

claiming acquisitive prescription in *Cockerham*, Plaintiff was living with one of the co-owners of

the Subject Tract and thus was at most a precarious possessor through the permission of that co-

owner, Eural Domangue.[82]


### III.  Law and Analysis

#### A.  *Legal Standard on Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery and disclosure

materials on file, and any affidavits show that "there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."[83]   When assessing whether a

dispute as to any material fact exists, the court considers "all of the evidence in the record but

refrains from making credibility determinations or weighing the evidence."[84]   All reasonable

inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits

setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either

support or defeat a motion for summary judgment."[85]   If the record, as a whole, could not lead a

---

[80] *Id.* (internal quotations omitted).

[81] Rec. Doc. 156 at p. 6.

[82] *Id.* at p. 6.

[83] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[84] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[85] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[86]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[87]   At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[88]   The nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[89]   In doing so, the nonmoving party must produce competent evidence to challenge the motion.[90]   Hearsay evidence and unsworn documents do not constitute competent summary judgment proof.[91]

In the opposition to the pending motion, Plaintiff argues that the moving party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the

---

[86] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[87] *See Celotex*, 477 U.S. at 322-23, 325.

[88] *See id.* at 324.

[89] *See, e.g., id*. at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).  Although the Court is to consider all evidence in the record in ruling on a motion for summary judgment, the Court is not required to search the record for evidence to support a party's opposition. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.") (citations omitted).

[90] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992) ("The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim.") (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 1263 (1992)).

[91] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (citations omitted).

claim—by showing that it would be entitled to a directed verdict at trial."[92]   Plaintiff is incorrect in arguing that the Lirette Family must show that it would be entitled to a directed verdict, because the party pleading acquisitive prescription bears the burden of proving all of the facts that are essential to support it.[93]   Therefore, Plaintiff will bear the burden of proof at trial and must present specific evidence of a genuine dispute of material fact to overcome summary judgment, after the Lirette Family demonstrates that the record is insufficient with respect to an essential element of the nonmoving party's claim.

### B.  Law of Acquisitive Prescription

#### 1.  Possession

Plaintiff claims to have acquired ownership of the Subject Tract by acquisitive prescription, which is "a mode of acquiring ownership or other real rights by possession for a period of time."[94]   To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing;[95] that is, one must exercise physical acts of use, detention, or enjoyment over a thing.[96]   The intent to possess as owner is presumed unless one began to possess in the name of and for another.[97]   In the absence of title, one has possession only of the area actually possessed.[98]

---

[92] Rec. Doc. 148 at p. 5 (citing *U.S. v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 398 (3d Cir. 1990); *U.S. v. O'Connell*, 890 F.2d 563, 567 (1st Cir. 1989)).

[93] *Brooking v. Vegas*, 03-1114 (La. App. 3 Cir. 2/4/04), 866 So.2d 370.  *See also Ricko Const., Inc. v. Dubois*, 10-1062 (La. App. 3 Cir. 2/9/11, 57 So. 3d 564 (holding that the party seeking to establish title through acquisitive prescription bears the burden of proof).

[94] La. Civ. Code art. 3446.

[95] La. Civ. Code art. 3424.

[96] La. Civ. Code art. 3425.

[97] La. Civ. Code art. 3427.

The acts sufficient to constitute possession depend primarily on the nature of the property.  "The quality of possession required in a particular case depends not only on its classification as good or bad faith possession, but also on the type of land in dispute."[99] Therefore, "the acts of possession required in the case of farm land must be of greater quality than in the case of woodland; and a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land."[100]

Because Plaintiff will have the burden of proof at trial to demonstrate her possession of the property, Plaintiff must present specific evidence of her possession of the disputed property to overcome summary judgment.  Two-thirds of the Subject Tract, and all of Unit Tract 2, are submerged marshlands.  Therefore, Plaintiff may demonstrate acts of possession of a lesser quality than the acts required to establish possession of woodland or farmland.  Defendants claim that Plaintiff only pays taxes on a mobile home located on the property, Plaintiff has not demonstrated any type of enclosures or boundaries around the property, and members of the Lirette Family have continuously visited the land.  However, Plaintiff claims that she erected a home on the property, she paid taxes on the property from 1986 to 2007 or 2008, she had the property surveyed and recorded a plat at the Courthouse, and she lives on the property.  Disputed issues of material fact clearly exist here as to the nature and extent of Plaintiff's and the Lirette Family's acts of possession.[101]  The Court finds that Plaintiff has demonstrated genuine issues of

---

[98] La. Civ. Code art. 3426.

[99] *Ricko Const., Inc. v. Dubois*, 2010-1062,  p. 4 (La. App. 3 Cir. 2/9/11); 57 So. 3d 564, 568 (citing *Liner v. Louisiana Land & Exploration Co.*, 319 So. 2d 766, 772 (La. 1975)).

[100] *Id.*

[101] *Simpson v. Davidson*, 35,048, p. 9 (La. App. 2 Cir. 10/31/01), 799 So. 2d 652, 657 (denying summary judgment because the issue of possession by any party had not been fully established because the record did not demonstrate "with exactitude" a fence on the property was "built or, more importantly, when it fell into disrepair").

material fact sufficient to overcome the motions for summary judgment, regarding her possession of the property.

### 2. *Acquisitive Prescription of Ten or Thirty Years*

Ownership and other real rights in immovables may be acquired by the prescription of ten years[102] or thirty years.[103]   Acquisitive prescription of thirty years does not require just title or good faith,[104] however, for purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed.[105]   The possession must be continuous, uninterrupted, peaceable, public and unequivocal.[106]

Acquisitive prescription of ten years requires possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.[107] The purpose of good faith acquisitive prescription of ten years is:

> to secure the title of a person who purchases immovable property by a deed translative of title, under the reasonable and objective belief that he is acquiring valid title the property, and thereafter remains in peaceful possession of the property for more than 10 years without any disturbance by the true owner.[108]

Although good faith is presumed, this presumption is rebutted on proof that the possessor knows, or should know, that he is not the true owner.[109]   A possessor is in good faith when he reasonably

---

[102] La. Civ. Code art. 3473.

[103] La. Civ. Code art. 3486.

[104] *Id.*

[105] La. Civ. Code art. 3487.

[106] La. Civ. Code art. 3476.

[107] La. Civ. Code art. 3475.

[108] *Cockerham*, 16 So.3d 1264, 1268.

[109] *Id.* (citing La. Civ. Code art. 3481).

believes, in light of objective considerations, that he is owner of thing he possesses.[110]  The trier of fact, here the jury, must ascertain in the light of objective considerations whether a reasonable person could believe himself to be the owner.[111]

Plaintiff acquired just title to the property through an Act of Sale, dated April 2, 1986, and recorded in the public record of Terrebonne Parish.  However, for Plaintiff to benefit from ten year acquisitive prescription, she must have possessed the land with just title in good faith. Good faith is presumed, but this presumption is rebutted on proof that the Plaintiff knows, or should know, that she is not the true owner.  The Court finds that a genuine issue of material fact exists regarding whether the Plaintiff reasonably believed, in light of objective considerations, that she was the true owner.  Plaintiff presented evidence of her chain of title and a survey of the property, duly recorded in the public record.  She claims that an experienced estate and title attorney, Milton Cancienne, handled the Act of Sale and after running the title back fifty years, he found no defects. He further relied on a valid judgment of possession that gave her predecessors in title good and valid title to the property, on its face.

Defendants dispute Plaintiff's good faith, claiming that she could not reasonably believe herself to be the true owner, because Plaintiff did not pay taxes on the property, Plaintiff did not take legal action to determine that she was the sole owner until the present suit, and Plaintiff's title is invalid.  Based on these facts, the Court finds that a genuine issue of material fact exists as to the Plaintiff's good faith.  It is for the trier of fact, here a jury, to decide the issue of whether Plaintiff reasonably believed, in light of objective considerations, that she was the true owner of the property.

---

[110] La. Civ. Code art. 3480.

[111] *Cockerham*, 16 So.3d at 1268 (citing La. Civ. Code art. 3480, cmt. (c)).

3.  *Ownership in Indivision*

Generally, an owner in indivision cannot acquire by prescription the rights of his co-owners in the property held in common, because possession by one co-owner is considered as being exercised on behalf of all co-owners.[112]  However, a co-owner may commence possession for himself when he demonstrates the intent to possess as the sole owner by "overt and unambiguous acts sufficient to give notice to his co-owner."[113]  "[W]here a co-owner goes into and continues possession under a recorded instrument apparently conveying title, even though the purported conveyance may be invalid, the recorded instrument together with the acts of possession constitute[] notice to the other co-owners" of hostile possession, thereby rebutting any presumption that possession is for the benefit of all co-owners.[114]

First, the Court is unconvinced that there is an issue of co-ownership here.  Plaintiff, on the one hand, and the Lirette Family and Rubaiyat, on the other, are disputing ownership of a 20% undivided interest in the Subject Tract.  Insofar as Plaintiff claims to own by acquisitive prescription 100% of the Subject Tract, then an issue of notice to co-owners would arise.  To the extent, as seems to be the case, that Plaintiff contends she owns a 20% undivided interest in the Subject Tract, she is not possessing against the co-owners of the remaining 80% interest.  She is claiming ownership of the same interest in the Subject Tract that the Lirette Family and Rubaiyat also claim ownership of: an undivided 20% interest in the Subject Tract.

---

[112] *Tilley v. Unopened Succession of Howard*, 43,013, p. 4 (La. App. 2 Cir. 2/20/08); 976 So. 2d 851, 853.

[113] La. Civ. Code art. 3439.

[114] *Tilley*, 976 So.2d at 854.

Second, if the record is simply unclear at this time,[115] and an issue of notice to co-owners is present, then Plaintiff must prove hostile possession against the other co-owners by overt and unambiguous acts.  Whether Plaintiff gave such notice, would be a disputed issue of material fact, as Plaintiff has presented sufficient evidence of overt and unambiguous acts to overcome a motion for summary judgment.

### IV. Conclusion

The Court finds that summary judgment is inappropriate, because disputed issues of material fact exist regarding the extent of Plaintiff's possession and her good faith.  Accordingly,

**IT IS HEREBY ORDERED** that The Lirette Family's Motion for Summary Judgment[116] and Castex's Motion for Summary Judgment[117] are **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>14th</u> day of January, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[115] The Court notes that the record is not clear at this time as to what property Eural Domangue owns. Furthermore, Castex's Motion for Summary Judgment argues that because Plaintiff voluntarily dismissed her claims against Eural J. Domangue, her current husband and one of the co-owners of remaining 80% undivided interest in the property, Plaintiff admits that her possession is not adverse to all of the co-owners of the remaining undivided 80% interests in the Subject Tract. Rec. Doc. 145-3 at p. 5.  Castex contends, without citing any law, that if Plaintiff "is not adversely possessing against the other co-owners, then it necessarily follows that any possession she might be exercising is likewise not adverse to the Lirette Family and Rubaiyat, L.L.C."  *Id.*

[116] Rec. Doc. 136.

[117] Rec. Doc. 145.